UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LISA DOE,

                    Plaintiff,

          – against –

DARREN K. INDYKE AND RICHARD D.
KAHN, ET AL.

                    Defendants.

**OPINION & ORDER**

19 Civ. 7773 (ER)

RAMOS, D.J.:

Lisa Doe brings this action for alleged sex trafficking and abuse she suffered at the hands of Jeffrey Epstein (now-deceased) and three of his associated business entities, which are alleged to have facilitated and participated in Epstein's conduct. This action is one of several brought in this District by Epstein's alleged victims.

The Amended Complaint alleges causes of action for battery, sexual assault, intentional infliction of emotional distress, negligent infliction of emotional distress, and violations of the Torture Victims Protection Act ("TVPA") against Epstein's estate, and for TVPA violations and negligence against Financial Trust Company, Inc. ("FTC"), NES, LLC ("NES") and HBRK Associates, Inc. ("HBRK," and together with FTC and NEC, the "Corporate Defendants"). Defendants move to dismiss two of the claims against Epstein's estate as being duplicative or time-barred, all of the claims against the Corporate Defendants for being improperly pled or time-barred, and the punitive damages claims against Epstein's estate on the grounds that punitive damages are not available against deceased defendants.

For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

## I.      FACTUAL BACKGROUND

The following facts are taken from Doe's Amended Complaint (Doc. 41).

Epstein is alleged to have been a man of enormous wealth who "had a compulsive sexual preference for young females," some as young as 14 years old, and who is alleged to have acted on that sexual preference for decades.  (Doc. 41 at 19.)   According to the Amended Complaint, and as relayed in the criminal indictment against Epstein, which is cited in the Amended Complaint and included as an exhibit thereto (the "Indictment"), Epstein enticed and recruited minor girls to visit his mansion in Manhattan to engage in sex acts with him, after which they were given hundreds of dollars in cash.  (*Id.* ¶ 26.) The Indictment also alleges that Epstein caused others to entice and recruit minor girls to engage in sex acts with him.  (*Id.*)  In order to maintain a supply of victims, Epstein paid some of his victims to recruit other girls to be similarly abused by him.  (*Id.* ¶ 27.) Victims were "initially recruited to provide 'massages' to Epstein, which would be performed nude or partially nude, would become increasingly sexual in nature, and would typically include one or more sex acts."  (*Id.* ¶ 30.)

### A.      The Alleged Conduct Against Doe

Doe alleges that she was one of these victims, and has been considered as such by the Government.  (*Id.* ¶ 32.)  Doe alleges that she was 17 when she was first sexually assaulted by Epstein in 2002.  (*Id.* ¶ 75.)  An avid dancer aspiring to a professional career in the field, Doe was approached at a New York dance studio by an associate of Epstein's who wished to hire Doe to teach a dance-based exercise class to a wealthy individual, later revealed to be Epstein.  (*Id.* ¶¶ 76-77.)  Doe went to Epstein's Manhattan property, where she met Epstein.  (*Id.* ¶¶ 78-80.)  Epstein engaged Doe in conversation and told her that he was closely connected to major dance companies in New York City, was personal friends with influential figures in dance, and that he could use his resources to further Doe's dance career.  (*Id.* ¶¶ 81-83.)  After making these representations, Epstein required Doe "to engage in various sexually-charged stretching activities."  (*Id.* ¶ 84.)  After the

initial session, Epstein asked Doe to return the following day for another session, and when she did, Epstein "was again only interested in sexually-charged stretching activities that involved [Doe] sitting on top of his body and pressing her body up against his in other manners." (*Id.* ¶¶ 88-89.)  Sometime thereafter, the associate who had initially approached Doe at her dance studio, called her on the telephone and told her that Epstein would like her to return to give him a massage.  (*Id.* ¶ 92.)  The associate explained that Doe would be paid $100 per hour to conduct the massage if she kept her clothing on, or $300 per hour if she performed the massage with her clothing off.   (*Id.* ¶ 93.)  Doe went to the Epstein property and met him in a massage room.  (*Id.* ¶¶ 95-96.)  Epstein instructed Doe on how he wished her to massage him, which Doe listened to "very intently, knowing that she had to comply with his demands if she wanted him to use his connections to help her—and, conversely, not punish her if she failed to comply—with her dance career." (*Id.* ¶ 96.)  During this massage, Epstein forcibly inserted a sex toy into Doe's vagina, instructed her to squeeze his nipples, and began to masturbate.  (*Id.* ¶¶ 98-99.)  Despite this sexual assault, Doe, "feeling she had no choice, especially in light of the promises and implied threats" made by Epstein, returned to the property on many occasions thereafter, where she was continually sexually abused, and after each such occasion was paid hundreds of dollars.  (*Id.* ¶ 104.)  This conduct continued for approximately eight years, until 2010.  (*Id.* ¶¶ 108, 118.)

> **B.     The Alleged Involvement of the Corporate Defendants**

Doe alleges that each of the Corporate Defendants performed actions or failed to perform actions that placed Doe in danger of being sexually abused by Epstein and assisted him in concealing his sexually abusive acts.[1]

---

[1] FTC is a U.S. Virgin Islands corporation, conducting business in New York, among other places.  (*Id.* ¶ 8.)  NES is a domestic limited liability company, registered in and conducting business in, among other places, New York.  (*Id.* ¶ 9.)  And, HBRK is a domestic business corporation, also registered in and conducting business in multiple locations, including New York.  (*Id.* ¶ 10.)  Employees of Corporate Defendants were paid through funds provided by Epstein. (*Id.* ¶ 137.)

The allegations against HBRK and NES are nearly identical, but are alleged in separate sections with clear headings identifying the defendant to which they pertain. Doe alleges that HBRK and NES employees were hired by Epstein "strictly to perform functions to allow his sexual activity with young females," including Doe and other minors to continue.  (*Id.* ¶¶ 40, 48.)  HBRK and NES employees each kept large amounts of cash at Epstein's properties, including the one in Manhattan where Doe was allegedly sexually assaulted, in order for Epstein to have money to pay his victims, including Doe, for sexual activities.  (*Id.* ¶¶ 41, 49.)  These employees were also tasked with maintaining a list of names and phone numbers of young females, including Doe, to schedule them to go Epstein's properties to engage in sexual activities with him.  (*Id.* ¶¶ 42, 43, 50, 51.) Employees were also expected to keep a schedule of appointment times for Doe and other young females so that a sexual encounter could occur at the exact place and time Epstein wanted.  (*Id.* ¶¶ 44-45, 52-53.)  HBRK and NES employees were also involved in recruiting additional victims and allegedly taught recruiters to inform Doe and other targeted young females that Epstein possessed great power and resources and that he would help them advance their education, careers, and lives if they provided Epstein with body massages.  (*Id.* ¶ 68.)  Doe also alleges that HBRK and NES employees helped conceal the sexual encounters between Epstein and Doe, and others, by:  paying them; hiring lawyers for them; labeling them as masseuses in an attempt to describe the sexual encounters as innocuous; reminding them how powerful and wealthy Epstein was in order to prevent them from revealing the illegal nature of Epstein's sexual abuse; and maintaining damaging files on many of them that could be used against them if they were ever to turn on Epstein.  (*Id.* ¶¶ 46, 54.)

The Amended Complaint's allegations against FTC are also clearly identified by a particular heading.  (*Id.* ¶¶ 55-67.)  FTC is alleged to have employed Epstein.  (*Id.* ¶ 55.) According to the Amended Complaint, FTC "knowingly turned a blind eye to the dangerous sexual addictive propensities of its employee, Jeffrey Epstein, despite

knowledge that he would cause harm to many young females including Plaintiff, in order to retain him as its most valuable employee." (*Id.* ¶ 57.) The Amended Complaint alleges that FTC's "corporate objective . . . was to provide Jeffrey Epstein with sexual massages" and the sexual massages Epstein required from young females, including Doe, were conducted in the course and scope of Epstein's employment with FTC. (*Id.* ¶¶ 56, 59.) The Amended Complaint alleges that FTC employees other than Epstein were involved in coordinating sexually explicit massages by Doe and other young females, often minor children, for Epstein. (*Id.* ¶ 62; *see also* ¶ 64.) FTC taught recruiters to inform Doe and other targeted young females that Epstein possessed great power and resources and that he would help them advance their education, careers, and lives if they provided Epstein with body massages. (*Id.* ¶ 68.) Epstein, allegedly, frequently utilized corporate finances in furtherance of his sexually explicit behavior and conducted business telephone calls on behalf of FTC while receiving sexually explicit massages. (*Id.* ¶¶ 61, 63.) Doe also alleges that FTC helped conceal the sexual encounters between Epstein and Doe, as well as other young females, by:  paying them; hiring lawyers for them; and labeling them as masseuses in an attempt to describe the encounters as innocuous. (*Id.* ¶ 67.)

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d

47, 50 n. 3 (2d Cir. 2007) (citation omitted), and "a complaint ... does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations and quotation marks omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. . ..."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

## III.    DISCUSSION

Defendants' motion argues that there are ten separate bases for dismissing certain of Doe's claims, or parts of those claims. Specifically, they argue that (a) the second cause of action, entitled "Sexual Assault," is duplicative of the first, titled "Battery/Violation of Section 130 against the Estate of Jeffrey E. Epstein;" (b) Doe's fifth cause of action, titled "Battery" is time-barred; (c) each of Doe's TVPA claims is partially time-barred to the extent they relate to conduct before August 20, 2009; (d) the TVPA claims against the Corporate Defendants fail to sufficiently allege the required intent

requirements under 18 U.S.C. § 1591; (e) Doe's TVPA claims against the Corporate

Defendants are conclusory and unsupported; (f) the negligence claims against the

Corporate Defendants are time-barred; (g) the negligence claims against the Corporate

Defendants should be dismissed because they fail to more than conclusorily plead

damages; (h) the negligence claims against NES and HBRK rely on impermissible group

pleading; (i) the Amended Complaint fails to allege a negligent supervision claim against

FTC; and (j) the punitive damages claims against Epstein's estate are precluded by law

because Epstein has died.  The Court addresses each argument in turn.

### A.    Defendants' Argument that Count II is Duplicative of Count I

Defendants seek to dismiss Doe's second cause of action, titled simply "Sexual

Assault," as duplicative of her first, titled "Battery/Violation of Section 130 against the

Estate of Jeffrey E. Epstein."  (*See* Doc. 50 at 6-7; Doc. 1 at 38-40.)  Defendants argue

that both claims rest on the same legal and factual foundations.  Specifically, Defendants

point to statements made in the Amended Complaint in which Doe defends the timeliness

of the second cause of action by invoking CPLR § 214-g.  That section was enacted as

part of the Child Victims Act ("CVA"), and created a one-year window to bring otherwise

time-barred claims for conduct "which would constitute a sexual offense as defined in

article one hundred thirty of the penal law" in certain circumstances, and, therefore,

Defendants argue, it is clear that both claims rest on the same legal theory, Penal Law

§ 130.

In response, Doe argues that her reference in the second cause of action to § 130

was a "typographical error" and that she intended for the claim to be based on New York

common law, as she argues the title of the claim suggests.  She also appears to suggest

that the first and second causes of action rest on separate factual allegations, one concerns

claims before Doe turned 18 and the other after she turned 18.

Neither party cites any law in favor of their respective positions.  While a plaintiff

may not plead the same claim twice, a plaintiff can plead alternative bases for relief.  *In*

*re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325 (S.D.N.Y. 2019).  "A claim is alternative and not duplicative if a plaintiff may fail on one but still prevail on the other."  *Id.* (citation omitted).

Doe's invocation of CPLR § 214-g indeed suggests that the second cause of action is premised on a sexual offense as defined in § 130 of New York's penal law, as is the case with the first cause of action, and therefore that both claims rise and fall together. A reading of the Amended Complaint does not suggest that the two causes of action relate to different time periods.  Accordingly, the Court dismisses the second cause of action without prejudice.[2]

**B.    Defendants' Argument that Count V is Time-Barred**

Defendants ask the Court to dismiss the Amended Complaint's fifth cause of action, "Battery Against Darren K. Indyke and Richard D. Kahan as Joint Representatives of the Estate of Jeffrey E. Epstein."  Defendants argue that under New York law, claims of battery perpetrated on an adult must be commenced within one year, and claims perpetrated against minors must be commenced with one year of the victim turning 18. Defendants argue that the battery claim therefore expired when Doe turned 18 in either 2002 or 2003, or sometime in 2011, one year after the date of the last alleged offense.

Doe argues the claims are timely pursuant to both the CVA and §CPLR § 215(8)(a).

---

[2] Doe urges the Court to ignore the reference to § 130 "and construe the paragraph as referring to a New York common law sexual assault claim, citing Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice") and Fed. R. Civ. P. 12(f) (a "court may strike from a pleading any . . . redundant . . . [or] immaterial . . . matter.").  The Court does not find that justice requires ignoring parts of the Amended Complaint here because Doe has an opportunity to replead the second cause of action if she chooses.

In their reply brief, Defendants argue that as Doe has described the second cause of action in her opposition brief, it is time-barred.  But, Defendants did not raise this argument in their opening papers and "[t]he law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered."  *In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017) (citing *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007)). While it is not immediately clear how Doe intends to escape the statute of limitations bar if she chooses to replead the cause of action, she is entitled to have an opportunity to present her position on the issue. Defendants can raise this statute of limitations issue then.

CPLR § 215(8)(a) allows civil plaintiffs, for a specified period of time, to bring actions against the same defendant and with respect to the same "event or occurrence" as was the subject of a criminal action, even if the statute of limitations on the civil claim has already run.  CPLR § 215(8)(a) provides:

> Whenever it is shown that a criminal action against the same defendant has been commenced with respect to the event or occurrence from which a claim governed by this section arises, the plaintiff shall have at least one year from the termination of the criminal action as defined in section 1.20 of the criminal procedure law in which to commence the civil action, notwithstanding that the time in which to commence such action has already expired or has less than a year remaining.

Section 215(8)(a) "is satisfied so long as '(1) a criminal action has been commenced, (2) against the same defendants, and (3) concerning the same event or transaction from which the civil action arose.'"  *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 62 (2d Cir. 2019) (quoting *Clemens v. Nealon*, 202 A.D.2d 747, 749 (1994)).

Doe argues that the criminal action against Epstein triggers the application of § 215(8)(a).  The Indictment accuses Epstein of engaging in sex trafficking and a sex trafficking conspiracy that led to the exploitation of dozens of minor girls, and Doe argues that she was one of these minor girls.  She argues that the abuse she alleges here is the same as that charged in the Indictment, and that she was considered a victim of Epstein's by the Government.  She further avers that as a victim, she delivered an impact statement before the Court presiding over Epstein's criminal case, and was identified as a victim by the Court.  Thus according to Doe, this action is timely pursuant to § 215(8)(a) so long as it is was brought within one year of the termination of the criminal case against Epstein, which it clearly was. [3]

In response, Defendants argue that Doe's reliance on § 215(8)(a) is misplaced because "to the extent Count V applies to conduct that occurred when Plaintiff was a

---

[3] Doe claims, and Defendants do not dispute, that the criminal action against Epstein terminated on August 27, 2019 when the Court dismissed the case following Epstein's death.  (Doc. 55 at 10.)  This action was filed on August 20, 2019, before the criminal case was dismissed.

minor, it is duplicative of Count I [and] [t]o the extent Plaintiff suggests that Count V is based on torts that occurred when she was an adult, CPLR § 215(8)(a) is inapplicable" as the Indictment only concerned allegations that Epstein abused "minor girls" between 2002 and 2005.  (Doc. 57 at 3.)

Defendants do not elaborate on their claim that Count V is duplicative of Count I to the extent it relates to conduct that occurred when Doe was a minor, referring only to the argument "above" with respect to Count II.  But Count II was duplicative of Count I because both were premised on a violation of Penal Code § 130.  That is not obviously and necessarily so here:  the Amended Complaint's description of Count V makes no mention of § 130, and Doe does not need to rely on the CVA, which references § 130, to avoid the statute of limitations here.  Because it seems the legal foundations of the claims are different, they are not duplicative.  Defendants' terse argument provides no reason to suggest otherwise.

Defendants' argument that § 215(8)(a) is inapplicable to Epstein's alleged battery of Doe as an adult is more fleshed out.  Defendants argue that for § 215(8)(a) to apply, the criminal action must relate to the "event or occurrence from which" the civil claim arises.  Defendants argue that the Indictment concerned the alleged sex trafficking of minors between 2002 and 2005, and therefore does not relate to "torts allegedly committed against adults, whether Plaintiff or otherwise."  (Doc. 57 at 3.)  Defendants argue that New York courts apply § 215(8)(a) "narrowly," and cite to two decisions that found § 215(8)(a) inapplicable where the civil action related to events that happened on different dates than the criminal action, and a third where the Court found § 215(8)(a) inapplicable because the defendants in the civil action were not charged in the criminal action.  (*Id.* (citing *Christodoulou v. Terdeman*, 262 A.D.2d 595, 596 (1999); *Gallina v. Thatcher*, No. 2017-52980, 2018 N.Y. Misc. LEXIS 8435, at *3 (Sup. Ct. Oct. 23, 2018); *McElligott v. City of New York*, No. 15 Civ. 7107 (LGS), 2017 WL 6210840, at *5 (S.D.N.Y. Dec. 7, 2017).)

Defendants, however, read the Indictment and the § 215(8)(a) caselaw too narrowly.  Unlike in *Christodoulou* and *Gallina*, the criminal case against Epstein did not relate to isolated events.  One of the charges in the Indictment was for participation in a "Sex Trafficking Conspiracy."  (Doc. 41-2.)  Among other things, the Indictment alleges that Epstein "enticed, recruited, and caused to be enticed and recruited, minor girls to visit his mansion in Manhattan, New York . . . to engage in sex acts with him, after which he would give the victims hundreds of dollars in case."  (*Id.* ¶ 2.)  The Indictment further alleges, however, that "once these minor victims were recruited, many were abused by Epstein on multiple subsequent occasions at" Epstein's New York residence.  (*Id.* ¶ 11.)  Defendants do not dispute that Doe was one of the "minor girls" referenced in the Indictment, and the Court finds that the allegations in the Amended Complaint about battery Doe sustained as an adult are reasonably read as being referenced in the Indictment.

Defendants, are correct, however that the conduct alleged in the Indictment spanned the period between 2002 and 2005, and therefore that the Indictment cannot for § 215(8)(a) purposes cover the allegations in the Amended Complaint between 2006 and 2010.  *See Christodoulou v. Terdeman*, 262 A.D.2d 595, 596 (1999).

In finding that § 215(8)(a) applies here to the claims between 2002 and 2005, the Court is guided by the Second Circuit's analysis in *Kashef*.  Plaintiffs in that case, alleged victims of atrocities in Sudan at the hands of the government there, brought tort claims relating to those atrocities against a French financial services corporation that had previously been convicted for federal and state felonies for evading U.S. sanctions on Sudan.  925 F.3d 53.  The Second Circuit determined that § 215(8)(a) could apply because the "causes of action ar[o]se out of the same occurrence as the criminal prosecution" because plaintiffs theorized that defendant was "illegally funding Sudan's commission of atrocities by avoiding U.S. sanctions put in place to protect the Plaintiffs and the purported class."  925 F.3d at 62-63.

The Court therefore has no trouble finding that the alleged battery against Doe as an adult arose out of the conduct that was the subject of Epstein's criminal case, indeed the conduct is arguably explicitly referenced in the Indictment.  Because a criminal action was commenced against Epstein, whose estate is being sued here,[4] "concerning the same event or transaction from which" this action arises, the Court finds that § 215(8)(a) applies and renders the battery claim alleged in Count V of the Amended Complaint timely to the extent it concerns conduct between 2002 and 2005 inclusive.  *See Kashef*, 925 F.3d at 62.

To the extent the fifth cause of action relates to conduct between 2006 and 2010, the claim is dismissed with prejudice as time-barred.  Section 215(8)(a) cannot cover these claims.  Nor would it seem could the CVA, as relying on the CVA would render the claim duplicative of the first cause of action for the same reasons as discussed above.

### C.      Defendants' Argument that Doe's TVPA Claims Are Partially Time-Barred

Defendants argue that Doe's civil TVPA claims, brought in separate counts against each of the Defendants, are time-barred.  Section 1595 of Title 18, which provides for civil TVPA suits, requires that such claims be brought "not later than the later of (1) 10 years after the cause of action arose; or (2) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense."  18 U.S.C. § 1595(c). Because, Defendants argue, Doe turned 18 in 2002 or 2003, and the Amended Complaint alleges that Defendants misconduct ended in 2010, any alleged conduct that occurred before August 20, 2009—ten years before Doe initiated this action—must be dismissed as time-barred.

Doe responds that the substantive violation she alleges through 18 U.S.C. § 1595 is a conspiracy to violate 18 U.S.C. § 1591, and claims of conspiracy are not time-barred

---

[4] Defendants do not argue that because Doe sues Epstein's estate here, this action was not brought against the "same defendant" as the criminal case, as § 215(8)(a) requires.

provided "at least one overt act in furtherance of the conspiratorial agreement" occurred within the limitations period.  (Doc. 55 at 18 (quoting *United States v. Ben Zvi*, 242 F.3d 89, 97 (2d. Cir. 2001).)

Defendants appear to concede the law, but dispute that the Amended Complaint alleges an overt act in furtherance of the conspiracy after August 20, 2009.  The Court disagrees.  For example, the Amended Complaint plainly states that, at Epstein's direction, Doe was paid to engage in commercial sex acts until 2010.  (Doc. 41 at 108; *see also* ¶ 111 (alleging that "from the time she met [Epstein] through and including 2010," Epstein would direct Doe to engage in sex acts with other females, in exchange for money, while he pleasured himself).)

Defendants dismiss these allegations as "hopelessly vague" and further argue that the allegations "only reference actions attributed to Decedent and unidentified 'employees or associates of the sex trafficking enterprise,'" and not the Corporate Defendants.  The Court disagrees that Doe is required to allege more details at this stage of the litigation.  And, it is not the law that a plaintiff is required to allege an overt action by every defendant or co-conspirator—one is enough.  *See United States v. Salmonese*, 352 F.3d 608, 615 (2d Cir. 2003) ("[A]bsent withdrawal, a conspirator's 'participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators.'") (quoting *United States v. Diaz,* 176 F.3d 52, 98 (2d Cir. 1999)).

While the Court disagrees that the conspiracy claims are time-barred, Doe has not presented arguments as to why the non-conspiracy claims, such as attempt, referenced in Counts VI to IX are not time-barred and the Court dismisses those with prejudice.

### D.   Defendants' Argument that Doe Has Failed to Allege the TVPA's Intent Requirements

Defendants additionally argue that Doe's TVPA claims against the Corporate Defendants must be dismissed because Doe has failed to allege the required intent requirements under 18 U.S.C. § 1591.  Defendants argue that Doe was required to allege

that each Corporate Defendant both "(1) knowingly recruit[ed] a person (or knowingly benefit[ed] from such a venture); and (2) [knew] that means of force, threats of force, fraud or coercion [would] be used by a person or the venture to cause a person to engage in a commercial sex act."  (Doc. 50 at 8 (citing *Lawson v. Rubin*, No. 17 Civ. 6404 (BMC), 2018 U.S. Dist. LEXIS 71582, at *35 (E.D.N.Y. Apr. 29, 2018).)  Defendants argue that Doe's Amended Complaint fails to allege either element.

As relevant here, § 1591 contains two intent requirements.  Section 1591(a) states:

(a) Whoever knowingly—

> (1) . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

Knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).  Therefore, a plaintiff must allege that a defendant violated either § 1591(a)(1) by knowingly recruiting, enticing, transporting providing, obtaining advertising, patronizing or soliciting a person *or* (2) by knowingly benefiting from participation in a venture that has engaged in any act described in § 1591(a)(1).  *And*, the plaintiff must allege that the defendant knew or acted in reckless disregard of the fact that force, threats of force, fraud, or coercion would be used to cause the person to engage in a commercial sex act, *or* that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act.  *Id.*

With regards to the first intent requirement, described in § 1591(a)(1) and (2), Defendants argue that the Amended Complaint "does not articulate how the Corporate Defendants purportedly benefited or participated in a TVPA violation."  (Doc. 57 at 6.) While the Amended Complaint includes conclusory allegations that Defendants benefited

from the TVPA violation (*see, e.g.* Doc. 41 ¶ 215), Doe's opposition brief indicates that she does not argue the "benefited" prong of § 1591(a)(2), but rather that Defendants knowingly participated in the TVPA violations under § 1591(a)(1) by recruiting, enticing, and otherwise soliciting Doe and other young female victims .  (Doc. 55 at 15.)  Indeed, the Amended Complaint includes numerous allegations detailing how the Corporate Defendants knowingly participating in the TVPA violations.  (*See, e.g.* Doc. 41 ¶¶ 39 & 47 (HBRK and NES employees were compensated specifically to help Epstein obtain young females, including Doe and other minors, with whom Epstein could engage in sex acts), ¶¶ 43 & 51 (HBRK and NES employees maintained a schedule for appointment times for young females, including Doe, to be at Epstein's Manhattan property for the purpose of making sure a sexual encounter occurred at the exact time Epstein wanted), ¶¶ 56, 62 & 64 (FTC employees, other than Epstein, were coordinating sexually explicit massages by Doe and other young females, often minor children, for Epstein), ¶ 68 (FTC, HBRK, and NES taught recruiters to inform Doe and other targeted young female victims that Epstein possessed great power and resources and that he would help them advance their education, careers, and lives if they provided Epstein with massages).)  The Court finds that these allegations sufficiently allege that the Corporate Defendants knowingly participated in the alleged TVPA violations.

Neither party dedicates any meaningful argument to assist the Court in determining whether Doe has sufficiently alleged the second intent requirement under § 1591, that the defendant knew or acted in reckless disregard of the fact that force, threats of force, fraud, or coercion would be used to cause a person to engage in a commercial sex act, *or* that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act.  Other than an incomplete description of this requirement (Defendants ignore the statutory language indicating that a plaintiff can satisfy this requirement by showing that defendants knew or should have known that the person engaged in the sex act "has not attained the age of 18 years"), Defendants simply

state that "Plaintiff fails to allege either of [the] essential [intent] elements of a TVPA violation" (Doc. 50 at 8) and the Amended "Complaint is devoid of any specific allegations, and Plaintiff fails to point to allegations establishing [either of the intent] requirement."  (Do. 57 at 6).[5]

The Court's independent analysis of the claims in the Amended Complaint suggests that Doe has adequately pled the second intent requirement.  First, the Amended Complaint pleads facts from which it is reasonable to infer that the Corporate Defendants knew or acted in reckless disregard of the fact that the females they were recruiting to engage in sexual activities with Epstein had not yet reached the age of 18.  (*See, e.g.*, Doc. 41 ¶¶ 39 & 47 (HBRK and NES employees were compensated specifically to help Epstein obtain young females, including Doe and other minors, with whom Epstein could engage in sex acts), ¶¶ 45 & 53 (HBRK and NES employees communicated with young females, including Doe, in order to ensure that Doe and others were in Epstein's presence for sexual encounters to occur with him at the exact time he wanted), ¶¶ 56, 62 & 64 (FTC employees, other than Epstein, were coordinating sexually explicit massages by Doe and other young females, often minor children, for Epstein), ¶ 68 (FTC, HBRK, and NES taught recruiters to inform Doe and other targeted young female victims that Epstein possessed great power and resources and that he would help them advance their education, careers, and lives if they provided Epstein with massages), ¶ 71 (HBRK, NES, and FTC, through their employees and independent contractors, recruited or procured dozens if not hundreds of young females, including minors, for the purpose of Epstein's sexual gratification.") ¶¶ 46, 54, 67 (noting that each Corporate Defendant made payments to young females).)  By including specific allegations that the Corporate Defendants intentionally targeted young and minor females, and further by including

---

[5] The Court shares in Doe's frustration that Defendants arguments are "terse."  These conclusory arguments complicate the Court's ability to evaluate Defendants' arguments as it is not always clear what precisely Defendants find insufficient about Doe's claims.

allegations suggesting face-to-face interactions between employees of the Corporate Defendants and the young women that provided the Corporate Defendants an opportunity to see the victims, the Court finds that Doe has sufficiently pled that Defendants knew or acted in reckless disregard of the fact the individual recruited to participate in the sex act had not yet reached the age of 18. *See United States v. Robinson*, 702 F.3d 22, 36 (2d Cir. 2012) (finding that trier of fact could determine that defendant knew victim was underage because "the jury also had an opportunity to witness [victim's] appearance at trial in June 2010 when she was nineteen, and based on that appearance jurors could have inferred that [defendant] knew that [victim] was a minor both before and after the statutory amendment in December 2008.")

Second, Doe sufficiently alleges that the Corporate Defendants were knowingly involved in coercing the sexual activity.  For example, the Amended Complaint alleges that HBRK and NES reminded victims, including Doe how powerful and wealthy Jeffery Epstein was in order to prevent them from revealing the illegal nature of the sexual abuse they suffered at Epstein's hands.  (Doc. 41 ¶¶ 46, 54.)  And, in addition, that FTC, HBRK, and NES taught recruiters to inform Doe and other targeted young female victims that Epstein possessed great power and resources and that he would help them advance their education, careers, and lives if they provided Epstein with the massages (*id.* ¶ 68). *See Geiss v. Weinstein Co. Holdings LLC,* 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019) ("TVPA extends to enticement of victims by means of fraudulent promises of career advancement, for the purpose of engaging them in consensual or, as alleged here, non-consensual sexual activity.")

The Court therefore finds that Doe has sufficiently pled § 1591's intent requirements.

### E.  Defendants' Argument that Doe's TVPA Claims Are Conclusory and Unsupported

Defendants argue that Doe's TVPA claims against the Corporate Defendants ought to be dismissed in their entirety because they are conclusory and unsupported.

In support of their position, Defendants point to 17 paragraphs describing the causes of action alleged in the Amended Complaint that are indeed conclusory when viewed in isolation.  (*See, e.g.* Doc. 50 at 9 (citing ¶¶ 213, 222, 230 (each Corporate Defendant "by and through its management and personnel, within the special maritime and territorial jurisdiction of the United States . . . knowingly recruited, enticed, harbored, transported, provided, obtained maintained, patronized, solicited by any means Plaintiff.")).)

But the 17 paragraphs Defendants point to are only a small fraction of those in the 288-paragraph Amended Complaint.  The Amended Complaint includes a lengthy discussion of factual allegations, some of which are discussed above and many of which provide far more than mere-formulaic recitations of the elements of a cause of action.  Defendants acknowledge four of these paragraphs but dismiss them as vague because "Plaintiff fails to articulate who did these things or when they occurred."  (Doc. 50 at 10.)

The Court disagrees that more is required at this juncture.  The Amended Complaint lays out in several paragraphs what specific actions were taken by employees of each Corporate Defendant, and provides the time period in which the actions are alleged to have occurred.  While, the Amended Complaint does not identify which specific employees took the action (though it does, as previously mentioned, explain who they were employed by), Defendants point to no authority suggesting that such specificity is required under Fed. R. Civ. P. 8(a).  The Second Circuit recognized that *Twombly* rejected "a heightened standard that requires a complaint to include specific evidence, factual allegations in addition to those required by Rule 8."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010).  Instead the Federal Rules require "only a short and

plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).[6]

Defendants also accuse Doe of engaging in group pleading, "impermissibly lump[ing] the Corporate Defendants' alleged conduct together."  (Doc. 50 at 10.)  While the Court suggested at a pre-motion conference that it agreed that Doe's first complaint engaged in group pleading (*see* Doc. 37 at 9:23-10:2), Doe amended her complaint to include numerous paragraph that separate the conduct of the various defendants and make clear what she alleges each specific Corporate Defendant did.  (*See, e.g.* Doc. 41 ¶¶ 37-67.)  The Corporate Defendants are thus able to identify what each of them are alleged to have done.

Accordingly, the Court denies Defendants' motion to dismiss the TVPA claims against the Corporate Defendants on the grounds that they are conclusory.

**F.    Defendants' Argument that Doe's Negligence Claims Against the Corporate Defendants are Time-Barred**

Defendants argue that Doe's negligence claims against the Corporate Defendants are time-barred because New York law provides that negligence claims must be brought within three years, or, in the case of a minor, three years after the minor turns 18.  (Doc. 50 at 12.)  Doe responds that the statute of limitations was clearly extended by the CVA, which references "negligent acts or omissions."[7]

---

[6] Later in their papers, Defendants take specific issue with certain allegations against FTC, which they believe to be conclusory.  (Doc. 50 at 11.)  The Court agrees that some of the allegations, viewed in isolation, are conclusory.  (*See, e.g.* Doc. 41 at ¶ 58 (FTC "operated to further Jeffrey Epstein's goal of to obtain, recruit, and procure young females for the purposes of providing him with sexually explicit massages."))  But, the Amended Complaint includes several other specific allegations against FTC, including, for example, that FTC employees coordinated sexually explicit massages for Epstein from underage young females, including Doe, and paid the young females.  (*See* Doc. 41 ¶¶ 56, 62, 64, 67.)

[7] N.Y. CPLR 214-g, enacted as part of the CVA, provides in relevant part:

Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, every

Defendants do not respond to this argument in reply, and the Court deems them to have abandoned the argument. *See Carlisle Ventures, Inc. v. Banco Español de Crédito, S.A.*, 176 F.3d 601, 609 (2d Cir. 1999) (holding that, because the defendant "does not respond to [the plaintiff's] [contrary argument] in its Reply Brief," the court should "decline to consider" such a response); *see also Stephens v. 1199 SEIU, AFL-CIO*, 45 F. Supp. 3d 284, 292 n. 14 (E.D.N.Y. 2014) (same).

### G. Defendants' Argument that Doe's Negligence Claims Against the Corporate Defendants Fail to More than Conclusorily Plead Damages

Defendants also urge the Court to dismiss the negligence claims against the Corporate Defendants on the grounds that Doe "merely recites the damages element of negligence." (Doc. 50 at 12.) Reading Defendants' papers, it seems that Defendants are complaining not that Doe has failed to state how she was damaged, but how the Corporate Defendants' negligence caused the damages. (*See, e.g.*, *id.* at 13 ("Plaintiff fails to articulate how any of the Corporate Defendants' alleged breaches of alleged duties contributed to Decedent's alleged conduct."))

Doe responds that the complaint is "replete" with detailed allegations explaining how the Corporate Defendant contributed to Epstein's abuse and "damaged Doe through their direct participation in Epstein's sex trafficking organization." (*See* Doc. 55 (citing Doc. 41 at ¶¶ 37-74).) Many of these allegations are considered in the Court's discussion above, and, based on the papers before it, the Court finds that the Amended Complaint

---

civil claim or cause of action brought against any party alleging intentional *or negligent acts or omissions* by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age . . ., which conduct was committed against a child less than eighteen years of age, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section.

(emphasis added).

includes specific allegations about how the Corporate Defendants' conduct facilitated Epstein's abuse.

Defendants' reply brief fails to respond to Doe's arguments, however, and the Court denies Defendants' motion with respect to this issue for the additional reason that Defendants' have abandoned the argument. *See Carlisle Ventures*, 176 F.3d at 609. Instead, Defendants' reply brief argues that Doe's negligence claims fail because the Amended Complaint does not sufficiently allege that the Corporate Defendants plausibly owed her a duty of care. (Doc. 57 at 7-9.) But, Defendants failed to raise this issue in their opening brief, Doe therefore has not had an opportunity to respond, and the Court declines to consider it. *See White v. First Am. Registry*, 592 F. Supp. 2d 681, 683 (S.D.N.Y. 2009) (declining to hear argument that should have been made in opening brief because to countenance "such action would promote litigation by ambush and, in any case, deprive defendant of a fair opportunity to respond.")

### H. Defendants' Argument that Doe's Negligence Claims Against HBRK and NES Impermissibly Rely on Group Pleading

Defendants argue that Doe's negligence claims against HBRK and NES impermissibly rely on group pleading, a similar argument to that discussed above with respect to Doe's TVPA claims.

Again, the Court disagrees with Defendants' characterization of the Amended Complaint. The Amended Complaint includes many specific allegations against both HBRK and NES, and notes with headings which actions are attributed to which individually. (*See* Doc. 41 ¶¶ 39-54.) While it is true that many of the allegations are repeated with respect to each Defendant, Defendants point to no authority suggesting that a plaintiff is not permitted to make the same allegations against different defendants, provided, as is the case here, the complaint pleads non-conclusory allegations such that each defendant is able to understand what they particularly are accused of doing.

21

Defendants' citation to *Lopez v. Bonanza.com, Inc.* does not support their argument but rather underscores the difference between the allegations here and the undifferentiated allegations other courts have found insufficient.  *See* No. 17 CIV. 8493 (LAP), 2019 WL 5199431, at *10 n. 20 (S.D.N.Y. Sept. 30, 2019).  There the Court found improper "several generalized allegations against all 'Defendants' collectively without separately and specifically identifying their individual alleged conduct" and where the "allegations d[id] not contain any specific facts to suggest that any individual" defendant ever engaged in the alleged wrongful conduct."  *Id.*  The Court reasoned that no individual defendant, therefore, "had fair notice of how it allegedly harmed Plaintiff because it was lumped together with other 'Defendants' without any distinction."  *Id*.  This is not the case here, the Amended Complaint clearly identifies, with headings and by specifically naming the relevant Defendant, what each of the Corporate Defendants are alleged to have done.

## I.   Defendants' Argument that Doe's Negligent Supervision Claim Against FTC Fails

Defendants specifically challenge as conclusory the negligence claim against FTC, which they characterize as a negligent supervision claim because it is "predicated upon [FTC's] alleged employment of" Epstein.  (Doc. 50 at 14.)  Doe does not dispute that her negligence claim against FTC is based on negligent supervision, "among other things."  (Doc. 55 at 23.)

To prevail on a negligent supervision claim, in addition to the traditional elements of negligence, a plaintiff must show "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels."  *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (*per curiam*) (citing *Kenneth R. v. Roman Catholic Diocese of Brooklyn,* 229 A.D.2d 159 (2d

Dep't 1997); *D'Amico v. Christie*, 71 N.Y.2d 76 (1987)).  "But," as recently recognized by the Second Circuit, "[t]he employee also must not be acting within the scope of his or her employment; [for] in that situation the employer [would] only be liable . . . vicariously under the theory of *respondeat superior*, [and] not for negligent supervision or retention."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129-130 (2d Cir. 2019) (quoting *Gray v. Schenectady City Sch. Dist.*, 86 A.D.3d 771, 927 N.Y.S.2d 442, 446 (3d Dep't 2011)) (alterations in *Rich*).

In defending her negligent supervision claim, Doe cites to her allegations that the "very 'corporate objective of [FTC] was to provide Jeffrey Epstein with sexual massages.'"  (Doc. 55 at 23 (citing Doc. 41 ¶¶ 59, 244) (alteration in Doc. 55).)  And while she points to other allegations that support the assertion that FTC's "corporate purpose" was to provide Epstein with sexual massages and therefore that the "corporate purpose" allegation was not conclusory, these claims simply suggest that Epstein and other FTC employees' actions were undertaken in the scope of their employment with FTC and therefore do not support a negligent supervision theory, but one of *respondeat superior*.[8]  Plaintiffs are permitted to plead both theories, "leaving it up to the jury to decide the scope of employment question," but Doe's discussion of the claims confuses the two in a manner that suggests that the negligent supervision claim is not properly pled.

Further, Defendants' opening brief specifically challenges as conclusory Doe's pleading with respect to showing that the torts were committed on FTC's property or using its chattels, and that FTC knew or should have known of Epstein's propensity for the conduct before Doe's injury.  (Doc. 50 at 15.)  Doe's opposition brief, seemingly

---

[8] Defendants did not address the *respondeat superior* theory in their opening brief, and mention it in their reply brief in an approximately page-long summary of an opinion by Judge Sweet on the issue.  (*See* Doc. 57 (citing *Doe v. Abdulaziz Bin Fahd Alsaud*, 12 F. Supp. 3d 674 679 (S.D.N.Y. 2014).)  To the extent Defendants are attempting to challenge Doe's claim of *respondeat superior* liability, the Court declines to consider the argument because it was not raised in Defendants' opening brief.  *See Carlisle Ventures*, 176 F.3d at 609.

confusing the elements of *respondeat superior* and negligent supervision, does not meaningfully address these asserted deficiencies.  The Court agrees that Doe's allegations with respect to the use of FTC's property or chattels are conclusory.  Doe alleges that "Epstein was frequently utilizing corporate finances in furtherance of his sexually explicit behavior" (Doc. 41 ¶ 61), but does not explain how he did so.  The Court disagrees that Doe's claims with regards to FTC's knowledge of Epstein's propensity are conclusory given the allegations regarding its role in coordinating sexually explicit massages and urging young females to participate in these massages.  (*See, e.g. id.* ¶¶ 62, 64, 67, 68.)

Accordingly, the Court dismisses without prejudice Doe's negligent supervision claim against FTC.

> **J.      Defendants' Argument that Doe's Punitive Damages Claims Fail**

Defendants seek dismissal of Doe's claims for punitive damages from Epstein's estate.[9]  Defendants challenge Doe's request for punitive damages as to both the claims under New York law and the federal TVPA.  The Court addresses each in turn.

> 1.      Punitive Damages Under New York Law

New York's Estates, Powers and Trusts law provides:

> No cause of action for injury to person or property is lost because of the death of the person liable for the injury.  For any injury, an action may be brought or continued against the personal representative of the decedent, *but punitive damages shall not be awarded nor penalties adjudged in any such action brought to recover damages for personal injury*.

N.Y. Est. Powers & Trusts Law § 11-3.2(a)(1) (emphasis added).

Applying this statute, courts have found that a plaintiff cannot recover punitive damages for personal injury tort actions against a decedent's estate.  *See, e.g.*, *Doe v. Indyke*, No. 19 Civ. 10758 (PAE), 2020 WL 2036707, at *2–3 (S.D.N.Y. Apr. 28, 2020)

---

[9] While they do not say so explicitly, Defendants do not dispute Doe's point that Defendants' arguments for dismissal do not apply to Doe's request for punitive damages from the Corporate Defendants.

(collecting cases).[10]  Doe suggests three reasons why the Court should not apply what would seem to be a clear statutory bar on punitive damages here.

First, Doe argues the Court should read this provision "as presupposing that the 'death' at issue was not self-inflicted by the tortfeasor, particularly where the tortfeasor appears to have committed suicide precisely to avoid punitive financial liability for his wrongdoing."  (Doc. 55 at 26.)  Doe speculates that she will be able to show through discovery that "Epstein committed suicide to escape large punitive damages awards which would erode his estate and consequently his plans for named beneficiaries to inherit his wealth."[11]  (*Id.* at 27.)  But, Doe provides no authority that would suggest that the Court can ignore the statute's clear text.  *See Guterman v. Costco Wholesale Corp.*, 927 F.3d 67, 69–70 (2d Cir. 2019) (rejecting interpretation of New York statute that conflicted with the "clear and unambiguous text" of the statute and noting that New York courts find that as "a general matter, [the] unambiguous language of a statute is alone determinative.") (quoting *Riley v. Cty. of Broome*, 95 N.Y.2d 455, 463–64 (2000).)  Doe cites one decision by the Indiana Supreme Court, where in deciding that Indiana law prohibited a plaintiff from recovering punitive damages from the estate of a deceased tortfeasor, the court speculated that if it were ever confronted with a scenario where "a tortfeasor seems to have considered his own death as an escape from punitive damages incident to some intentional tort" it would "address that issue at that time."  *See Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135, 139 (Ind. 2005).  Whatever the persuasive value of this *dicta*, *Crabtree* considered Indiana common law and not a statute that is reasonably read to foreclose the interpretation Doe seeks.

---

[10] This case is one of several currently pending in this District brought by one of Epstein's alleged victims and also raises the issue of the availability of punitive damages against Epstein's estate.

[11] Doe argues that "Epstein initially attempted suicide in the Metropolitan Correction Center just one day after being served with a civil complaint seeking punitive damages," and thereafter executed a new will just two days before committing suicide.  (Doc. 55 at 27-28.)

Second, Doe argues that the Court should "permit discovery to move forward to allow Doe to establish the elements of equitable estoppel—specifically, that Epstein's estate is equitably estopped from raising the New York restriction on damages because of Epstein's own wrongful actions." (Doc. 55 at 29.)  The "wrongful actions" Doe references are not those alleged in Amended Complaint, but Epstein's affirmative wrongdoing "in committing suicide," the wrongfulness of which Doe argues "has long been recognized."  (*Id.* at 29-31)  Doe analogizes to situations in which courts have found that the doctrine of equitable estoppel can be applied to preclude a defendant from asserting a statute of limitations defense, and argues that Epstein's conduct "now creates the grounds for his estate to try to raise a bar against punitive damages." (*Id.* at 29)  While there may be multiple deficiencies in Doe's novel argument, even the cases Doe cites note that equitable estoppel is only applicable where a plaintiff reasonably relies on defendants "deception, fraud or misrepresentations," and Doe does not allege a "deception, fraud or misrepresentation" by Epstein with regards to his suicide and on which she reasonably relied. *See N. Coast Outfitters, Ltd. v. Darling*, 134 A.D.3d 998, 999 (N.Y. App. Div. 2015) (quoting *Putter v. North Shore Univ. Hosp.,* 7 N.Y.3d 548, 552–553 (2006)).

Third, Doe argues that "Virgin Island courts would not permit Epstein to escape punitive damages liability through self-murder" and further that the Court should allow the case to proceed to discovery to allow the parties to investigate which forum has a greater interest in adjudicating Doe's claims in order to resolve the choice of law decision that "lurks in this case." (Doc. 55 at 32-36.)  Doe, however, nowhere explains why Virgin Islands law might apply to this case, which alleges torts under New York law committed entirely within New York.  Federal courts in New York apply New York's choice of law analysis.  Under that analysis "[b]ecause punitive damages are conduct-regulating, 'the law of the jurisdiction where the tort occurred will generally apply.'"  *Starr Indem. & Liab. Co. v. Am. Claims Mgmt., Inc.*, No. 14 Civ. 0463 (JMF), 2015 WL 2152816, at *3 (S.D.N.Y. May 7, 2015) (quoting *Deutsch v. Novartis Pharm. Corp.,* 723 F.Supp.2d

521, 524 (E.D.N.Y.2010)); *see also  Doe v. Indyke*, No. 19 Civ. 10758 (PAE), 2020 WL

2036707, at *5 (S.D.N.Y. Apr. 28, 2020).  Accordingly, a choice of law analysis suggests

that New York law applies here, and therefore that N.Y. Est. Powers & Trusts Law § 11-

3.2(a)(1) bars punitive damages here.[12]

1.   Punitive Damages Under the TVPA

The parties cite no cases that have considered the availability of punitive damages

under the TVPA from a deceased defendant, and the Court is aware of none.  As a general

matter with regards to claims brought under federal law, "[u]nless a statute directly

addresses the issue, courts are generally guided by principles of federal common law,

which prescribe that claims characterized as 'penal' abate upon a party's death, while

claims characterized as 'remedial' survive."  *U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*,

603 F. Supp. 2d 677, 680 (S.D.N.Y. 2009).  Though both parties agree that punitive

damages are available under the TVPA, the TVPA does not state whether claims for

punitive damages survive a defendant's death.  A remedial statute "do[es] not seek to

punish but to compensate."  *Biatiu v. Specialized Loan Servicing LLC*, No. 19 Civ. 822

(RA), 2019 WL 5448702, at *2 (S.D.N.Y. Oct. 24, 2019) (citing *S.E.C. v. Wyly*, 860 F.

Supp. 2d 275, 283 (S.D.N.Y. 2012)).  Even where a statute is characterized as remedial,

however, courts have found punitive damages unavailable.  *See, e.g.*, *Estwick v. U.S. Air

Shuttle*, 950 F. Supp. 493, 498 (E.D.N.Y. 1996) (The punitive damages are plainly penal. .

..); *Equal Employment Opportunity Comm'n v. Deloitte & Touche, LLP*, No. 97 Civ. 6484

(LMM), 2000 WL 1024700, at *7 (S.D.N.Y. July 25, 2000).

This law suggests that punitive damages under the TVPA are not available after a

defendant has died.  Doe argues, however, that Epstein's estate should not be able to take

advantage of an abatement argument, first, pursuant to equitable estoppel principles, an

---

[12] Moreover, in another case brought by one of Epstein's alleged victims, Judge Engelmayer opined that
Virgin Islands courts would also bar punitive damages against the estate of a deceased tortfeasor,
suggesting that no conflict of law exists.  *See Doe v. Indyke*, No. 19 CIV. 10758 (PAE), 2020 WL 2036707,
at *7 (S.D.N.Y. Apr. 28, 2020)

argument the Court addressed and rejected above; and, second, because "[a]llowing a notorious sex trafficker such as Epstein to avoid punitive damages through the expedient of suicide—common law 'self-murder'—would thwart Congress's purpose of protecting victims from sex trafficking operations directed by wealthy individuals, who upon capture could simply commit suicide to evade the full financial consequences of their crimes" and would "be contrary to common law principles underlying punitive damages." (Doc. 55 at 39.)

The Court is not convinced that Doe's stated reason justifies deviating from the rule that punitive damages are unavailable after a defendant dies.  The Supreme Court has recognized that the purpose of punitive damages it "to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Smith v. Wade*, 461 U.S. 30, 54, (1983) (citing Restatement (Second) of Torts § 908(1) (1977)) (modification in *Smith*); *see also Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992) (same).  After a defendant dies, the first two purposes of punitive damages, punishment and specific deterrence, cannot be achieved.  *See Kahlily v. Francis*, No. 08 C 1515, 2008 WL 5244596, at *6 ("Even if Kahlily could prove that Francis had engaged in outrageous conduct that caused a constitutional deprivation, the imposition of punitive damages cannot punish him or deter him from engaging in similar conduct in the future.")  Further, the general deterrence purpose of punitive damages for TVPA violations is served by the availability of punitive damages against defendants who are alive.  It is highly doubtful that a would-be TVPA violator would be less dissuaded to violate the statute by the prospect that punitive damages could be avoided if he committed suicide.  Even Doe appears to concede that this possibility is unlikely.  (*See* Doc. 55 at 28 ("It is apparent that a well-developed suicide-to-escape-punitive-damages issue has not been decided in a reported New York case, and perhaps under any case in American law.  That should come as no surprise given the unusual set of circumstances that must align to present the issue.").)

Accordingly, Doe's claims for punitive damages against Epstein's estate are dismissed with prejudice.

## II.      CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with respect to Count II, Count V to the extent it alleges conduct between 2006 and 2010, Counts VI-IX to extent they allege a TVPA violation, other than conspiracy, before August 20, 2009, Count X to the extent it alleges a claim of negligent supervision, and Doe's claims for punitive damages against Epstein's estate.  The remainder of Defendants' motion to dismiss is DENIED.[13]

Doe is directed to file an amended complaint by June 30, 2020, if at all.  If an amended complaint is filed, Defendants are directed to respond to that complaint by July 21, 2020.  If no amended complaint is filed, by July 28, 2020 the parties are directed to file, on consent, a proposed discovery schedule and Defendants are directed to answer Doe's First Amended Complaint.

The Clerk of the Court is respectfully directed to terminate the motions at Docs. 49, 53, and 60.

It is SO ORDERED.

Dated:     June 9, 2020
           New York, New York

_____
                 EDGARDO RAMOS, U.S.D.J.

---

[13] Defendants' request for oral argument (Doc. 60) is denied as moot.